IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TOU VANG,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>PAMELA BONDI, United States Attorney General, et al.,<br><br>　　　　　　　Defendants. | 0:26-CV-1381<br><br>MEMORANDUM AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

　　　The petitioner is a noncitizen currently detained by U.S. Immigration and Customs Enforcement. He seeks a writ of habeas corpus under 28 U.S.C. § 2241. Filing 1. He asserts his detention is unlawful because the government revoked his order of supervision without regard for his due process rights. The Court will grant the petition.[1]

### I. STANDARD OF REVIEW

　　　The writ of habeas corpus is available to every individual detained in the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2008); *Boumediene v.*

---

[1] A petitioner seeking release from immigration detention shall be awarded costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), unless the Court finds that the government's position was substantially justified or that special circumstances make an award unjust. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483 (3d Cir. Feb. 2, 2026); *see also, e.g.*, *Yeferson G.C. v. Easterwood*, No. 25-CV-4814, 2026 WL 207266, at *3 (D. Minn. Jan. 21), *report and recommendation adopted*, 2026 WL 209825 (D. Minn. Jan. 27, 2026); *Mairena-Munguia v. Arnott*, No. 25-CV-3318, 2025 WL 3229132, at *5 (W.D. Mo. Nov. 19, 2025); *cf. Bah v. Cangemi*, 548 F.3d 680 (8th Cir. 2008) (evaluating the merits of immigration habeas petitioner's EAJA claim). <u>Any motion for costs and fees pursuant to the EAJA in this case should be filed within 30 days of the entry of judgment</u>. *See* § 2412(d)(1)(B).

*Bush*, 553 U.S. 723, 742-43 (2008). Historically, the protections of the writ have been strongest when reviewing the legality of executive detention. *I.N.S. v. St. Cyr,* 533 U.S. 289, 301 (2001). The Great Writ is "a vital instrument" to protect individual liberties, and is an essential check on abuses of government power. *Boumediene*, 553 U.S. at 743.

Except during periods of formal suspension, federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty." *Id.* at 745 (quoting *Hamdi*, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." *Id.* at 744 (quoting The Federalist No. 84 (Alexander Hamilton)).[2]

28 U.S.C. § 2241 confers federal jurisdiction to hear statutory and constitutional challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *accord Shah v. Reno*, 184 F.3d 719, 724 (8th Cir. 1999). Petitioners must show they are in custody in violation of the Constitution or laws of the United States. *See* § 2241(c)(3); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025). Release is the typical remedy for unlawful detention. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

---

[2] "[C]onfinement of the person, by secretly hurrying him to jail, where his sufferings are unknown or forgotten, is a less public, a less striking, and therefore a *more dangerous engine* of arbitrary government." The Federalist No. 84 (quoting 1 William Blackstone, Commentaries *136) (emphasis in original).

The writ of habeas corpus, and the Fifth and Fourteenth Amendments, prevent tyrannical governments from making "scape goats [sic] of the weak, or of helpless political, religious, or racial minorities and those who differed, who would not conform and who resisted tyranny." *See Chambers v. Florida*, 309 U.S. 227, 236 (1940). The right of habeas corpus, among others, is an "assurance against ancient evils," preserving the "blessings of liberty." *Id.* at 237 n.10.

## II. BACKGROUND

The petitioner came from Laos to the United States as a refugee in 1994. He was a lawful permanent resident as of March 1996. In 2005, he was convicted of an aggravated felony in Minnesota, and the government initiated removal proceedings. In October 2006, he was ordered removed from the United States.

However, the government did not (and could not) remove the petitioner within 90 days as required by law. 8 U.S.C. § 1231(a)(1)(A). Laos would not take the petitioner, so he was stateless and had nowhere to be removed *to*. Therefore, the petitioner was released from detention, "subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). He was "placed under supervision and permitted to be at large" in February 2007, subject to certain conditions. Filing 1-2 at 2; *see* 8 C.F.R. § 241.13.

The petitioner was "encountered" and detained by ICE on December 10, 2025. Filing 8 at 2. There was no warrant for his arrest, nor any notification that his order of supervision had been revoked. He was provided an informal interview on December 10, filing 9-2 at 1, but not provided a notice of revocation of release until December 16, filing 9-2 at 3.

## III. REGULATORY FRAMEWORK

An order of supervision under § 241.13 can be revoked, and a noncitizen can be re-detained, under two circumstances: (1) the noncitizen violated any of the conditions of his release, or (2) the government identifies "changed circumstances" that indicate a "significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i). If release is revoked, the government must notify the noncitizen of the reasons for revocation. § 241.13(i)(3). The noncitizen, once in custody, is entitled to a prompt "initial informal interview," and must have an "opportunity to respond to the reasons

3

for revocation stated in the notification." *Id.* The noncitizen "may submit any evidence or information" showing there is no significant likelihood that he will be removed, or that he has not violated the conditions of his supervision. *Id.*

Willful violations of an order of supervision may result in up to one year in prison. § 1253(b). Continued detention, beyond the removal period, of noncitizens who are likely to be removed in the reasonably foreseeable future is governed by 8 C.F.R. § 241.4. *See* § 241.13(i)(2). The government's failure to follow the regulations set forth in § 241.13 indicates an unlawful detention. *See Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cali. 2025) ("Courts have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered."); *Faysal N. v. Noem*, No. 25-cv-4641, 2026 WL 36066, at *5 (D. Minn. Jan. 6, 2026) (detention is unlawful where "ICE did not comply with its own regulations under section 241.13(i)(2)."); *Phongsavanh v. Williams*, No. 4:25-cv-426, 2025 WL 3124032, at *5 (S.D. Iowa Nov. 7, 2025) (same); *accord Zhu v. Genalo,* 798 F. Supp. 3d 400, 414 (S.D.N.Y. 2025) (detention is unlawful where ICE failed to follow procedures in § 241.4).

## IV. DISCUSSION

The government in this case asserts that it revoked the petitioner's order of supervision on December 16, 2025, because of a change in circumstances that indicate a foreseeable removal to Laos. Filing 8 at 2. But the petitioner was detained on December 10, and the travel documents demonstrating the purported "change in circumstance" were not obtained until earlier this month. *See* filing 8 at 2. The government detained the petitioner first, and asked questions later. That's not how this works.

The petitioner is not alleged to have violated the conditions of his release, nor has he committed any crimes since 2005. The only basis for his detention

4

is an alleged "change in circumstance" that didn't occur until two months after his detention. The government provided the petitioner with a notice of revocation *after* his purported opportunity to respond to the reasons for revocation, contrary to the requirements of § 241.13. [3]

The government relies on *Zadvydas v. Davis* for the proposition that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. 678, 701 (2001). The government argues it has shown a likelihood of removal because it obtained travel documents for the petitioner. *See* filing 8 at 2.

But *Zadvydas* does not apply to noncitizens subject to an order of supervision, where there has *already been* a determination that a noncitizen is not likely to be removed. *See, e.g., Trejo v. Warden of ERO El Paso E. Mont.*, 25-cv-401, 2025 WL 2992187, at *6-7 (W.D. Tex. Oct. 24, 2025) (distinguishing noncitizens released pursuant to an order of supervision from "typical Zadvydas petitioners"). Rather, under these circumstances, the regulations in § 241.13 apply, and it is the government's burden to show a change in circumstance *before* revoking an order of supervision and detaining a person indefinitely.

The petitioner's detention violates the basic pillars of the Fifth Amendment. Considering the perennial factors of *Mathews v. Eldridge*, 424 U.S. 319 (1976), the petitioner's detention without the codified regulatory protections violates the Constitution. *See Rodriguez Diaz v. Garland*, 53 F.4th

---

[3] The government provided evidence (after the response deadline) that an informal interview occurred on December 10, 2025. Filing 9-2 at 1. But that evidence doesn't make sense. The undated statement from an immigration officer says the petitioner had the opportunity "to respond to the reasons for revocation . . . stated in the notification letter," but the notification letter *didn't exist yet. Compare* filing 9-2 at 1, *with* filing 9-2 at 3 (Notice of Revocation of Release dated Dec. 16, 2025).

1189, 1206 (9th Cir. 2022) (applying *Mathews* test in the immigration detention context). In determining whether a person has been provided due process, the Court considers the private interest affected, the risk of erroneous deprivation through additional procedures, and the government's interest, both financially and administratively, in providing the additional process.

The petitioner has "the most elemental of liberty interests" in being free from detention. *See Hamdi,* 542 U.S. at 529; *Trejo*, 2025 WL 2992187, at *6. The government's failure to follow the codified regulations creates a high risk of erroneous deprivation of that liberty. And the government has *no* interest in re-detaining noncitizens who have not violated the conditions of their supervision without a hearing *already required by law*; there are no additional burdens—financial, administrative, or otherwise—in securing codified procedural safeguards. The regulatory requirement for an "informal interview" after re-detention is a *bare minimum* procedural protection that the government is already required to provide.

The government decided in 2007 that the petitioner was not likely to be removed in the foreseeable future, and was not a risk to the community, when it released him subject to an order of supervision. He was re-detained in 2025, and provided an "informal interview" and an opportunity to challenge the reasons for the revocation of his release *before* being given the reasons for the revocation of release. That is a violation of his Fifth Amendment rights.

The petitioner is entitled to challenge the reasons for revoking his release *after* he learns what those reasons are, and, for the government to detain him beyond the removal period (which has long passed), he is entitled to the procedures in § 241.4, which include a bond hearing in front of an immigration judge. *See* § 241.13(i)(2); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

Nothing in this Order invalidates the 2006 removal order. But the government's custody of a person without regard for its own regulations is an unlawful detention indeed. The writ will be granted. To remove or detain the petitioner, the government must *strictly follow* the procedures outlined in §§ 241.13 and 241.4. Accordingly,

IT IS ORDERED:

1. The Petition for Writ of Habeas Corpus (filing 1) is granted.

2. The government shall, if necessary, immediately return the petitioner to the District of Minnesota.

3. When the petitioner is in Minnesota, the government shall immediately release the petitioner subject to and in accordance with the conditions in his preexisting Order of Supervision (filing 1-2), and shall return any personal property seized from the petitioner when detained.

4. No later than **February 20, 2026**, the government shall file a status report certifying compliance with this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY

Dated this 18th day of February, 2026.

BY THE COURT:

_____
John M. Gerrard
Senior United States District Judge